492 P.2d 1184

**KENTUCKY CENTRAL LIFE INSURANCE COMPANY, Petitioner,**

**v.**

**The Honorable Morris ROZAR, Judge of the Superior Court of Arizona, et al., Respondents.**

**No. 10406.**

Supreme Court of Arizona,
In Banc.

Jan. 21, 1972.

Rehearing Denied Feb. 22, 1972.

Browder, Gillenwater & Daughton by Robert W. Browder, Phoenix, for petitioner.

Jennings, Strouss & Salmon by Thomas J. Trimble, Phoenix, for respondents (except American Benefit).

Cox & Cox by Alfred S. Cox and George S. Livermore, Jr., Phoenix, for respondent American Benefit Life Insurance Co.

Allen L. Feinstein, Phoenix, for intervenor National Securities, Inc.

STRUCKMEYER, Justice.

In this special action, Kentucky Central Life Insurance Company seeks by certiorari to review certain receivership orders of the respondent judge, Morris Rozar. Petitioner's request for relief is denied.

The National Producers Life Insurance Company is an Arizona corporation authorized to transact business as a life and disability company in fourteen states: Alabama, Arizona, Colorado, Idaho, Louisiana, Montana, Nevada, New Mexico, Oklahoma, Oregon, Texas, Utah, Washington, and Wyoming. On December 31, 1968 it had approximately 16,118 registered stockholders holding 2,782,546.90 shares, and it had 46,738 policies in force, representing $168,878,894 of insurance. For the year 1968 it had earned premiums of $4,131,733 as against claims paid out in the total amount of $633,565.67. Although the insurance in force was a profitable business, the company had unusually high operating expenses, in excess of 50% of its premium income.

National Producers was placed in receivership by order of the Superior Court of Maricopa County, Arizona, on December 8, 1969. The receiver, Respondent Millard Humphrey, State Director of Insurance, with the consent of the Superior Court, entered into a plan for rehabilitation pursuant to A.R.S. § 20–611 et seq. The objectives of the receiver were to infuse new assets into the company by which deficits in its reserves would be made up, and to supply new management which would reduce the company's expenses

On May 30, 1970, the American Benefit Life Insurance Company, an Alabama corporation, purchased a majority of the stock of National Producers. Under a plan acceptable to the receiver, American Benefit sought to improve the financial condition of National Producers by, among other things, (1) transferring to National Producers stock in Southwest Forest Industries, Inc. of the value of $2,280,000, (2) transferring to National Producers certain promissory notes secured by pledges of shares of stock of Southwest Savings and Loan Association, Phoenix, Arizona, (3) having four properties reappraised so as to reflect a higher market value, (4) causing the removal of certain contingent liabilities (policyholder reserves) in excess of $1,000,000 by assuming the reserve liability on a 100% co-insurance agreement between Alabama National Life Insurance Company and National Producers, (5) establishing a reserve in the amount of $1,050,000 for paid up block insurance, hereinafter called the KC 2 policies. These, together with other matters of no particular significance to this decision, improved the financial condition of National Producers by $4,941,754.

On June 30, 1970, respondent receiver issued a financial statement showing that National Producers' financial condition was one of solvency. On December 23, 1970, after an extended hearing, the respondent judge determined that National Producers had been rehabilitated and was entitled to restoration of its certificate of authority to transact business. Kentucky Central Life Insurance Company, petitioner herein, objected, demanding that National Producers be kept in receivership until certain asserted disputes with National Producers were adjudicated. Respondent judge, on February 3, 1971, declined to prolong the receivership in order to provide a vehicle for a determination of Kentucky Central's claims, but modified its order to indicate that Kentucky Central was not prejudiced in any claim it might have because of the order terminating the receivership.

The action in this Court is to review the orders of December 23, 1970 and February 3, 1971 and if the orders are found to be unlawful, to require the respondent judge to continue the receivership.

Petitioner, Kentucky Central, attacks the plan of American Benefit under which respondent judge determined that National Producers had been rehabilitated for the alleged reason that National Producers was, in fact, insolvent. Insolvency, for insurance companies, is defined by statute as:

> "The capital of a stock insurer * * * shall be deemed to be impaired and the insurer shall be deemed insolvent, when such insurer is not possessed of assets at least equal to all liabilities and required reserves together with its total issued and outstanding capital stock * * * required by this title to be maintained * * *." A.R.S. § 20–611, subsec. 6.

Arizona's Act is substantially the same as the Uniform Liquidation Act, *see* 9A, Uniform Laws Annotated.

By A.R.S. § 20–620, subsec. C, in rehabilitation proceedings the Director of Insurance may at any time apply to the court for an order of termination so that a company doing insurance business will be permitted to resume possession of its property and the conduct of its business. The Superior Court must determine "that the purposes of the (rehabilitation) proceeding have been fully accomplished."

We take it there can be no dissent to the proposition that under statutes similar to Arizona's the burden is upon a company previously found to be insolvent to show that rehabilitation is no longer necessary. *See* State ex rel Dirks v. Capitol Security Life Ins. Co. of Sioux Falls, 84 S.D. 595, 174 N.W.2d 212; and that a rehabilitation proceeding cannot be terminated unless it was first shown that there is a substantial margin of safety between solvency and insolvency. *See* Application of People (In re Globe and Rutgers Fire Insurance Company), 149 Misc. 18, 266 N.Y.S. 603.

The principal areas of dispute which lead Kentucky Central to conclude that National Producers was still insolvent on the dates of December 23, 1970 and February 3, 1971 will be hereinafter discussed under appropriate headings.

## THE KENTUCY CENTRAL CONTRACT

Prior to September 21, 1967, Kentucky Central had issued to various persons policies of paid-up life insurance. These policies are collectively referred to as the KC 2 policies. The amount of reserve necessary to be set aside and maintained to meet these policy obligations is an amount slightly in excess of $1,000,000. On September 21, 1967, Kentucky Central and National Producers entered into a written contract of reinsurance covering the KC 2 policies. The contract provided that National Producers would assume, carry out, and fully perform the obligations of Kentucky Central contained in the policies. National Producers also agreed to indemnify Kentucky Central and hold it harmless from any and all claims and liability whatsoever incurred and arising out of or connected with the policies. Kentucky Central paid to National Producers the sum of $900,000 in consideration of the assumption of liability by National Producers.

Thereafter, on December 15, 1967, National Producers entered into a written contract of bulk reinsurance with the Alabama National Life Insurance Company, by which National Producers transferred to Alabama National, assets of the value of approximately $900,000 and Alabama National assumed the liability on the KC 2 policies. On the same date, Alabama National entered into a similar agreement with Old National Insurance Company of Alabama by which Old National assumed the obligations of the KC 2 policies. Subsequently, both Alabama National and Old National were declared insolvent and placed in receivership in the State of Alabama. Notwithstanding the insolvency of both Old National and Alabama National and the fact that National Producers remains liable to each KC 2 policyholder, the respondent Millard Humphrey failed to

show on the financial statement of June 30, 1970 of National Producers a reserve liability for the KC 2 policies, has refused to pay the KC 2 policyholder claims that have arisen during the receivership of National Producers, and has refused to honor any obligations under the contract of reinsurance between Kentucky Central and National Producers.

Kentucky Central strenuously argues that the court below could not terminate the rehabilitation proceedings without first determining whether the purposes of the proceedings had been fully accomplished; that there is simply no way to adjudicate the issue of solvency without determining whether National Producers is liable on the KC 2 policies and whether it must set up a reserve for them. Hence, Kentucky Central concludes that the court must, before terminating the rehabilitation proceedings, determine the rights of Kentucky Central and National Producers under the contract of reinsurance.

However, we think the complete picture of the present status of the KC 2 policies supports the action of the respondent judge. In particular, we think that even though it be assumed that National Producers is liable on the KC 2 policies, it need not set up a reserve to meet their payment.

As part of the plan under which American Benefit sought to improve the financial condition of National Producers, the receiver entered into a contract with American Benefit solely for the purpose of removing the reserve liability for the KC 2 insurance from the books of National Producers. The contract provided by § 4 that:

"Following the Effective Date as hereafter provided, upon receipt of claims upon policies under said KC 2 Block of Insurance Business on which there are no defenses against the policy owner, American Benefit shall advance to National Producers such monies as are necessary to permit National Producers to pay these claims of policyholders of said KC 2 Block of Insurance Business,

and American Benefit shall be subrogated insofar as possible to the rights of National Producers. American Benefit, in that event, shall receive from National Producers an agreement for certificate of contribution pursuant to A.R.S. § 20–275 to the extent of one-half (½) of said amounts advanced repayable to American Benefit at six percent (6%) per annum out of the surplus of National Producers in excess of five hundred thousand dollars ($500,000.00). American Benefit will litigate with Kentucky Central Life Insurance Company the issue of ultimate liability for said claims and one-half of any recovery or benefit shall go to National Producers."

American Benefit was also required by the respondent Insurance Director to set up $1,000,000 in reserves to guarantee payment of the KC 2 policies.

It is apparent from § 4 of the contract that American Benefit is required to advance to National Producers such monies as are necessary to pay the claims of the KC 2 policyholders, and that National Producers must repay one-half of the advances *out of any surplus in excess of $500,000*. The ultimate liability of National Producers for payment of the KC 2 policies is, consequently, contingent upon its having a surplus greater than $500,000 out of which to reimburse American Benefit for one-half of the amount advanced.

■ It is clear that National Producers under the agreement with Kentucky Central has contracted unconditionally for payment of the KC 2 policies which normally would require the establishment of a reserve. But since payment will, in effect, be made by American Benefit under the reorganization agreement and repayment will not start until after National Producers establishes a half-million dollar surplus, the respondent judge could consider that National Producers was solvent and that under A.R.S. § 20–620 "the purposes of the proceeding have been fully accomplished." Therefore, the reinstatement of its certificate of authority to transact business need not wait.

for a legal determination of the question of whether the reinsurance agreement between National Producers and Kentucky Central was fraudulently induced.

It would appear that for the purpose of our decision this is essentially a problem in accounting. National Producers has an absolute liability for one million dollars on the KC 2 policies, but American Benefit has, in effect, assumed liability for their payment. While National Producers has this liability of one million dollars, it also has an offsetting asset for one million dollars, because of the agreement with American Benefit for advances to National Producers for such sums as are necessary to pay the KC 2 policies. Since the repayment of one-half to American Benefit is only out of surplus, National Producers need not set up reserves out of which payment of the policies will be secured.

We hold that this is a matter for the exercise of sound discretion by the trial court and that it was not exercised arbitrarily in light of the fact that American Benefit has a surplus of fifteen million dollars, has set up a reserve of $1,000,000 to secure the KC 2 policies and has the obvious ability to perform the agreement.

We express some reservations as to the accounting practice as reflected in the receiver's financial statement of June 30, 1971 in failing to disclose in some manner National Producers' liability for the claims of the KC 2 policyholders. The failure to indicate the liability of the company for payment of these policies out of surplus may tend to suggest an unrealistic picture as to the value of the company's stock. However, it does not affect the merits of the rehabilitation plan and, accordingly, we pass on to Kentucky Central's second point of disagreement.

## THE REAPPRAISAL OF NATIONAL PRODUCERS' PROPERTIES

In attacking the court's order of December 23, 1970, Kentucky Central also attacks the statement of financial condition of National Producers. The statement re-

flects a surplus in the amount of $969,754. It is urged that this financial statement is more in the nature of an itemized recapitulation showing National Producers' condition as to its solvency in the form of changes since the financial statement of June 30, 1970. One of the changes is an increase in the market value by $735,000 of four parcels of real estate owned by National Producers. The parcels of real estate are office buildings in Salt Lake City, Utah, the Pioneer Bank Building in Prescott, Arizona, office buildings in Houston, Texas and a building in Little Rock, Arkansas.

This increase arises solely out of new appraisals obtained by American Benefit on the four parcels of real estate. In the response of Judge Rozar and Millard Humphrey, it is stated without subsequent contradiction that the reappraisal came about in this manner: That the receiver had initially requested two appraisers to view the properties owned by National Producers. These appraisers were not asked to spend the time and research necessary to make a full and complete MAI appraisal. Thereafter the receiver advised American Benefit that if it would obtain a full and complete MAI appraisal on the properties, he would accept the valuation fixed by them. On the basis of the appraisals so made, which were submitted to the court at the time of the petition for termination of receivership, the value of the four pieces of property was increased by the amount stated. Copies of these appraisals have been submitted to this Court as exhibits.

We do not, however, base this decision on our examination of the appraisers' reports. Here again, we think this is an area peculiarly within the trial judge's discretion. Obviously, he felt that the appraisals justified the valuations placed upon them as an asset of National Producers in the amounts set forth therein. Equally obvious, unless there is asserted some plain error in the appraisals, which there is not, of which this Court could take notice, we are compelled to accept Judge Rozar's conclusions

**82**

as to the increase in National Producer's assets.

Accordingly, it is ordered that petitioner's prayer for relief is denied.

HAYS, C. J., CAMERON, V. C. J., and HOLOHAN, J., concur.

LOCKWOOD, J., did not participate in the determination of this matter.